**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**PHILLIP S. GLASS,**                                       **PLAINTIFF**

**V.**                        **CIVIL ACTION NO. 3:15-CV-014-SAA**

**COMMISSIONER OF SOCIAL SECURITY,**            **DEFENDANT**

## MEMORANDUM OPINION

Plaintiff Phillip S. Glass has applied for judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's decision denying his Title II application for a period of disability (POD) and disability insurance benefits (DIB), as well as his Title XVI application for supplemental security income (SSI) under the Social Security Act.  Plaintiff protectively filed applications for benefits on October 11, 2011 alleging disability beginning on January 1, 2009. Docket 10, pp. 121-29.  The agency administratively denied the plaintiff's claim initially and upon reconsideration.  Plaintiff then requested an administrative hearing, which an Administrative Law Judge (ALJ) held on September 26, 2013.  *Id.* at 22-53.  The ALJ issued an unfavorable decision on December 3, 2013 (*Id.* at 8-17), and the Appeals Council denied plaintiff's request for a review on November 21, 2014, *Id.* at 1-4.  Plaintiff timely filed the instant appeal from the decision, and it is now ripe for review.

Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I.     EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520; 416.920.  The burden to prove

disability rests upon plaintiff through the first four steps of the process, and if plaintiff is successful in sustaining his burden at each of the first four levels, the burden then shifts to the Commissioner at step five. *See Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999). First, the plaintiff must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b); 416.920(b). Second, the plaintiff must prove his impairment(s) are "severe" in that they "significantly limit[] his physical or mental ability to do basic work activities . . .." 20 C.F.R. § 404.1520(c); 416.920(c). At step three the ALJ must conclude that the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010). 20 C.F.R. § 404.1520(d); 416.920(d). If the plaintiff does not meet this burden, at step four he must prove he is incapable of meeting the physical and mental demands of his past relevant work. 20 C.F.R. § 404.1520(e); 416.920(e). Finally, at step five, the burden shifts to the Commissioner to prove that, considering plaintiff's residual functional capacity, age, education and past work experience, he is capable of performing other work. 20 C.F.R § 404.1520(g); 416.920(g). If the Commissioner proves other work exists which plaintiff can perform, plaintiff is then given the chance to prove that he cannot, in fact, perform that work. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

## II.     FACTS

Plaintiff was born December 20, 1973 and was 39 years old at the time of the ALJ hearing. Docket 10, p. 28-29. He is considered a younger individual for the purpose of determining disability benefits. He has a high school education and attended one year of college. *Id.* at 29. He has an extensive medical history. In 1984, plaintiff's right leg was amputated above the knee after he was diagnosed with osteosarcoma in the right distal femur. *Id.* at 213-14.

In 1991, the osteosarcoma reoccurred in his left lung, requiring wedge resection of the lower lobe of his left lung. *Id.* at 234. In 1999, he suffered a right femoral neck fracture which required pin placement in his right femoral head. *Id.* at 251. He has had extensive chemotherapy and has, over the years, received treatment for a variety of additional medical issues including regurgitation of the tricuspid valve of the heart, interstitial lung disease, peripheral neuropathy, and gastroesophageal reflux disease. *Id.* Despite his medical history, plaintiff was previously employed in various temporary jobs classified at the heavy exertion level including as a welder, warehouse worker, and roofer. Docket 10, pp. 29-35, 45-48.

After reviewing the record as a whole, the ALJ issued his unfavorable opinion on December 3, 2013. *Id.* at 8-17. The ALJ first determined that plaintiff had met the insured status requirement through March 31, 2011. *Id.* at 10. To evaluate the plaintiff's disability claim, the ALJ proceeded through the Social Security Administration's five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *see also id.* at 8-17. From that process, the ALJ determined that the claimant suffered from the "severe" impairments of "right above the knee amputation, mild tricuspid regurgitation, sensorineural hearing loss, gastroesophageal reflux disease (GERD), and interstitial lung disease," (*Id.* at 12), but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). Docket 10, p. 11-12.

The ALJ then determined that plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except that he could not "climb ladders, ropes, or scaffolds;" could "occasionally balance, crouch, stoop, kneel or crawl; could not work at unprotected heights;" could not "push, pull, or operate foot controls with his right lower extremity;" needed "the option to sit or stand at will at the workplace; must avoid

concentrated exposure to pulmonary irritants; and would be limited to jobs with a noise intensity level of moderate or lower as defined in the Selected Characteristics of Occupations." Docket 10, p. 11-15. He found that although the plaintiff was unable to perform any past relevant work, there were jobs that exist in significant numbers in the national economy which plaintiff could perform, such as a cashier or a ticket seller. *Id.* at 16. Based on these findings, the ALJ determined that plaintiff was not eligible for disability benefits under the Social Security Act. *Id.* at 17.

## III.    STANDARD OF REVIEW

The court's scope of review is limited. On appeal the court must consider whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Crowley*, 197 F.3d at 196, citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). In making that determination, the court has the responsibility to scrutinize the entire record. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence leans against the Commissioner's decision. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *see also Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley*, 197 F.3d at 197 (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614,

617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the ALJ's conclusions. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crowley*, 197 F.3d at 197. "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson*, 402 U.S. at 390.

## IV.    DISCUSSION

Plaintiff argues the ALJ erred in several ways when deciding that plaintiff was not disabled under the Social Security Act. Plaintiff argues the ALJ (i) erred in his evaluation of treating physician and DDS opinions; (ii) erred in his assessment of the consultative examiner; (iii) violated the provisions of *Stone v. Heckler*; (iv) erred in using boilerplate language; and (v) failed to follow the treating physician's rule. *See generally* Docket 16.

### A.    Did the ALJ Err in Consideration of Dr. Folse's Opinion?

In asserting these errors, arguments (i) and (v) bring a similar argument—that the ALJ inadequately considered the medical evidence, including the opinion of plaintiff's treating physician from St. Jude Children's Research Hospital, Dr. Timothy E. Folse. Docket 16, pp. 7-12, 19-27. For that reason, the undersigned has considered these arguments in conjunction with each other.

At step two, the ALJ found that plaintiff suffered from several severe impairments: "right above the knee amputation; mild tricuspid regurgitation; sensorineural hearing loss; gastroesophageal reflux disease (GERD); and interstitial lung disease." Docket 10, pp. 10-11. Then, after determining that plaintiff's impairments or combination of impairments did not meet a listing, the ALJ assigned a "light work" RFC with some limitations. *Id.* at 11-12. In reaching this RFC finding, the ALJ engaged in a two-step analysis where he concluded that "the

claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible." *Id.* at 13.  As part of his credibility determination and RFC finding, the ALJ elected not to give controlling weight to the opinion of the treating physician, Dr. Folse, but instead gave significant weight to the non-examining consultant reviewer, Dr. Carol Kossman.  Docket 10, p. 15.  Plaintiff claims this RFC was reached in error because records from Dr. Folse, indicate that plaintiff would not be capable performing work under such conditions.  Docket 16, pp. 7-12, 19-27.

As this court has reiterated many times, the law governing consideration of opinions from treating physicians is clear.  While "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position," *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000), the responsibility to determine the plaintiff's RFC belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  Even though the opinion of a claimant's treating physician is entitled to great weight, an ALJ nevertheless may discount the opinion for good cause.  *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995), citing *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

The ALJ wrote that he "determined it proper to give less than controlling weight to the opinion of the claimant's treating physician, Dr. Folse[,] as a result of persuasive contrary evidence, as supported by 20 C.F.R. §404.1527(d)(2) . . . ." *Id.* at 14.  In addition to the medical records from St. Jude Children's Hospital, Dr. Folse penned a letter on February 25, 2013, that detailed plaintiff's medical history with the hospital, which began with a cancer diagnosis in 1984 when plaintiff was a child.  Docket 10, pp. 251-52.  Dr. Folse concluded his letter by writing, "[i]n my opinion, these conditions indicate that Mr. Glass is unable to be gainfully employed." *Id.* at 252.  Though plaintiff asserts it was error not to give this opinion controlling

weight, the ALJ correctly noted first and foremost that the ultimate "determination of whether an individual is disabled is clearly reserved to the Commissioner." Docket 10, p. 15. Thus, as the ALJ asserted, he was under no duty to give any significance to this conclusory statement by Dr. Folse. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

Plaintiff also asserts that the ALJ inappropriately focused on this single conclusory statement from Dr. Folse and did not properly consider the remainder of the medical evidence. Docket 16, pp. 8-12. He quotes the ALJ:

> The undersigned rejects Dr. Folse's opinion that the claimant is not capable of gainful employment. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

*Id.* at 15. Plaintiff contends this statement exemplifies that the ALJ's decision to disregard considerable evidence of plaintiff's medical condition and resulting impairments, and there was not sufficient contrary medical evidence to justify withholding the deference ordinarily reserved to a treating physician's records and opinion. Docket 16, p. 8-9.

However, the ALJ elected not to give Dr. Folse's opinion controlling weight for several justifiable reasons—not simply because he suspected that the doctor expressed a more sympathetic opinion to assist his patient. For instance, the ALJ provided several instances from the records where Dr. Folse's conclusion was inconsistent with his own findings and indications that objective tests demonstrated little abnormality beyond plaintiff's pre-existing impairments. For example: "Although Dr. Folse lists plaintiff's mitral regurgitation of the tricuspid valve as a

limiting impairment, his treatment notes describe the murmur as 'mild' and contained no restrictions on activity for the claimant." Docket 10, p. _____; "Although claimant reported back pain to his treating physician in June 2012, Dr. Folse found he had normal range of motion, normal strength, and no tenderness in his musculoskeletal system. His motor sensory functions were also grossly normal." Docket 10, p. ____; and "[Dr. Folse] lists regurgitation of the tricuspid valve as one of [plaintiff's] compromising impairments (Exhibit 8F), but in his treatment notes he refers to the claimant's heart murmur as mild (Exhibit 9F). He notes chronic back pain due to altered gait (Exhibit 8F), but his treatment notes reflect the claimant's musculoskeletal exam and neurological exam are normal." Docket 10, p. ____.

In addition, the ALJ correctly noted that the medical evidence from other sources also confirms these relatively normal findings given plaintiff's complaints. For instance, the functional performance test performed at St. Jude in May 2013 revealed some below normal dorsiflexion and left quadriceps strength, but plaintiff's physical performance test was within normal limits, his electrocardiogram was normal, and he was simply advised to exercise more and be careful walking around in poorly lit areas or on uneven surfaces. Docket 10, p. 13-14, 360. Also, when plaintiff presented to the ER in July 2013, his "pulmonary, cardiac, extremity, and neurologic exams were normal" and he was diagnosed with a lumbosacral sprain by the admitting physician, Dr. Jason Waller. *Id.* at 14, 325.

The court has thoroughly reviewed the medical records and observed similar findings throughout the medical record. For instance, an X-ray report from March 2012 indicates that plaintiff exhibited no cardiomegaly, clear lungs, no infiltrates, and no other acute findings other than a questionable left upper lobe nodule. Docket 10, p. 225. Similarly, a visit to the Baptist Memorial Hospital's Emergency Room in July 2013 was diagnosed as a lumbosacral sprain and

other pain consistent with plaintiff's pre-existing impairments. Docket 10, p. 324. The court is certainly sympathetic with the litany of ailments and difficulties plaintiff has endured and continues to endure in his everyday life, the reality is that there is abundant medical evidence to support the ALJ's decision. Whether the court would have reached a different decision is not relevant; the court is limited to determining only whether the ALJ's decision was justified by substantial evidence as that term has been defined by the Fifth Circuit. Further, there is simply no evidence in the record which objectively confirms deterioration of plaintiff's condition as of his alleged onset date or since then.

After comprehensive review of the record, the undersigned is of the opinion that the ALJ properly considered Dr. Folse's opinion and that the ALJ's decision not to assign controlling weight to that opinion was substantially justified. Rather than failing to consider Dr. Folse's opinion, the ALJ relied on consistent contrary medical evidence which did not provide ample objective justification for plaintiff's claims.

### B. Did the ALJ Err Assessing the Consultative Examiner's Opinion?

Dr. Bruce Randolph performed a consultative examination of plaintiff in January 2012. Docket 10, pp. 220-23. As a result of his examination Dr. Randolph concluded that claimant was "limited in his ability to perform activity which requires the use of his right lower extremity . . . climbing stairs, ladders, squatting, kneeling, and crawling." *Id.* at 223. Further, Dr. Randolph advised that plaintiff could "sit and use his left lower extremity and both upper extremities, . . . intermittently stand and walk every 10 minutes as needed, . . . [and] should be able to lift and carry at least 15 pounds." *Id.*

In assessing this opinion, the ALJ afforded Dr. Randolph's opinion only partial weight, because the plaintiff had been unable to state what his lifting and carrying capabilities were at the

hearing.  The ALJ ultimately found that the claimant could at least lift and carry up to the exertional limits of the light work RFC and that plaintiff would need an option to sit or stand at will while at the workplace. Docket 10, p. 13.  Plaintiff asserts that the ALJ did not provide a reason for having given only partial weight to Dr. Randolph's opinion and that the ALJ's "standing and walking limitation is absolutely inconsistent with the light work" RFC.  *Id.*

The plaintiff's argument is without merit.  As to the claimed error of assigning only partial weight to Dr. Randolph's opinion, it must be noted that the ALJ is the fact-finder and has sole responsibility for weighing all the evidence, including the opinions from consultative examiners. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).  Regarding the argument that the ALJ's limitation on standing and walking is inconsistent with a light work RFC, the limitations placed on plaintiff's light work RFC sufficiently account for limitations highlighted by Dr. Randolph's opinion and, thus, are not inconsistent.  Docket 17, p. 16.

Contrary to plaintiff's assertions [Docket 16, p. 13], the ALJ did not find that plaintiff could perform the full range of light work, his conclusions were not inconsistent.  The ALJ limited plaintiff to light work by "requiring no climbing ladders, ropes, or scaffolds or pushing, pulling, or operating foot controls with his right lower extremity; occasional balancing, crouching, stooping, kneeling, crawling, and climbing ramps or stairs; and the option to sit or stand at will."  Docket 17, p. 17.  Not only was such a finding in many ways consistent with Dr. Randolph's opinion, but by placing limitations such the "sitting and standing at will" option [Docket 10, p. 12] on plaintiff's RFC, the ALJ accounted for plaintiff's impairments.

## C.  Did the ALJ violate the provisions of *Stone v. Heckler*?

Plaintiff says the ALJ violated the provisions of *Stone v. Heckler* by failing to mention certain impairments in his determination of plaintiff's severe impairments at step two.  Docket

16, pp. 14-16. His medical records reflect that he suffers from a host of other conditions, such as hypersensitivity reaction and reduced pulmonary diffusions, which "were not determined to be either severe impairments, non severe impairments or even medically determinable impairments." *Id.* at 14. According to plaintiff, having not included these various impairments in the step two analysis violates the severity standard provisions of *Stone v. Heckler*. *Id.* at 14-16; *see also* 752 F.2d 1099, 1101 (5th Cir. 1985) ("[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience.").

This argument, too, is without merit. Although *Stone* provides the severity standard for determining impairments, the ALJ fulfilled that obligation. *See* Docket 17, pp. 19-24. The ALJ found that the plaintiff suffered from several severe impairments: "right above the knee amputation; mild tricuspid regurgitation; sensorineural hearing loss; gastroesophageal reflux disease (GERD)[;] and interstitial lung disease." Docket 10, pp. 10-11. In doing so, the ALJ concluded that those impairments provided a "more than minimal effect on the claimant's ability to perform work-related activities" and were, therefore, severe in nature. *Id.* at 10. The Commissioner asserts that this reference to the *Stone* opinion, as well as a discussion of what qualifies as non-severe, the citation to SSR 85-28, and the ALJ's findings of severe impairments all, in conjunction, satisfy *Stone*. Docket 17, pp. 19-21. The court agrees.

Even though plaintiff relies on the statement from *Stone* that "we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard . . . unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used," the

Fifth Circuit has revised otherwise strict standard since *Stone* was decided. For instance, the Circuit has since held that a failure to cite *Stone* is not automatic reversible error. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). There, the court noted that failing to specifically identify the specific applicable legal standard, thus requiring absolute procedural perfection, was not required unless it affected the substantial rights of a party. *Id.*

The court applies the same reasoning from *Taylor v. Astrue.* The ALJ did not specifically mention *Stone*, but it is evident from his reference to the standard from *Stone,* as well as his discussion and analysis of plaintiff's medical records and impairments, that the standard was applied and the evidence of severity was properly considered. Finally, the court finds that plaintiff has not shown how the ALJ's step two finding violated SSR 96-8p.

### D.  Did the ALJ improperly use boilerplate language?

Plaintiff  cites a recent opinion from this court for his claim that the ALJ improperly used boilerplate language in reaching his ultimate disability determination. Docket 16, p. 16-19 (relying on *Gonzalez v. Commissioner of Social Security*, No. 14-104, 2015 WL 1509497 (N.D. Miss. March 31, 2015). However, the instant case, and more particularly the ALJ's analysis from the case, are quite distinguishable from *Gonzalez.*

Put simply, the plaintiff's argument misconstrues and misapplies the reasoning from *Gonzalez. Gonzalez* discussed the ALJ's use of boilerplate language because it involved "inexcusably brief, rote, unsupported conclusions" which represented a lack of analysis on the part of the ALJ in considering the plaintiff's disability. *Id.* at 5. That is not the case here. This particular plaintiff certainly has suffered some incredible adversity since he was a child; nevertheless, the ALJ's analysis itself was quite thorough. *See generally*, Docket 10, pp. 8-17. Although the opinion certainly includes some boilerplate language from the template criticized in

*Gonzales*, particularly when detailing many of the procedures an ALJ must proceed through to analyze a disability case properly, the use of the language itself is not error; it was the failure to engage in particularized evaluation of the plaintiff's claims beyond use of the template format that led to the court's decision in *Gonzales*. *See generally*, Docket 10, pp. 8-17. When considered against the entirety of the evidence, the ALJ's analysis in this case quite obviously takes into account the entire spectrum of evidence. The ALJ engaged in detailed discussion of the plaintiff's medical records and, provided ample reasoning for his findings. Such an opinion certainly satisfies the necessary requirements for a proper analysis.

## V.     <u>CONCLUSION</u>

After diligent review, the court concludes that the ALJ's decision was supported by substantial evidence and applied the proper legal standards. The Commissioner's decision is affirmed, and the case is closed. A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 6th day of November, 2015.

                                     /s/ S. Allan Alexander
                                  UNITED STATES MAGISTRATE JUDGE